UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DELTA ROBERTS,

                              Plaintiff,

v.                                                             3:13-CV-0310
                                                               (GTS)
CAROLYN W. COLVIN, Comm'r of Soc. Sec.,

                              Defendant.
_____

APPEARANCES:                                   OF COUNSEL:

LACHMAN & GORTON                               PETER A. GORTON, ESQ.
  Counsel for Plaintiff
1500 East Main Street
P.O. Box 89
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.                    HEETANO SHAMSOONDAR,
OFFICE OF REG'L GEN. COUNSEL – REGION II       ESQ.
  Counsel for Defendant                        MONIKA K. CRAWFORD, ESQ.
26 Federal Plaza
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

          Currently before the Court, in this Social Security action filed by Delta Roberts

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on

the pleadings.  (Dkt. Nos. 10, 16.)  For the reasons set forth below, Defendant's motion is

granted in part and denied in part, and Plaintiff's motion is granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on October 18, 1972.  She obtained a General Equivalency Diploma and completed less than one year of college.  Most recently, Plaintiff worked as a housekeeper in a hotel.  Prior to that she worked as a cashier both in a large department store and in a smaller convenience store.  Plaintiff has also worked in the fast food industry.  Generally, Plaintiff's alleged disability consists of borderline personality disorder, depression, anxiety, neck pain and back pain.  Her alleged disability onset date is March 2, 2010.

### B.    Procedural History

On March 2, 2010, Plaintiff applied for Supplemental Security Income.  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On March 16, 2011, Plaintiff first appeared before the ALJ, John P. Ramos.  At that time, the ALJ entered a continuance so that Plaintiff could obtain legal counsel.  (T. 53-58.)  Represented by counsel, Plaintiff appeared before the ALJ a second time, and a hearing was held.  (T. 22-52.)  The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on September 9, 2011.  (T. 6-21.)  On February 5, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-4.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 11-16.)  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date.  (T. 11.)  Second, the ALJ found that Plaintiff's

musculoskeletal pain is a severe impairment.  (T. 11-14.)  Third, the ALJ found that Plaintiff's impairment did not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 14.)  The ALJ considered listing 1.04.  (*Id.*)  Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 416.967(b).  (T. 14-16.)  Fifth, and finally, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T. 16.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes four separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues that the ALJ erred in failing to consider her emotional impairment to be severe and in failing to properly consider her functional limitations as a result thereof.  (Dkt. No. 10 at 11-14 [Pl.'s Mem. of Law].)  Second, Plaintiff argues that the ALJ erred in failing to properly assess her credibility.  (*Id.* at 14-15.)  Third, Plaintiff argues that the ALJ erred in failing to properly evaluate the opinions of her treating physician and consulting physicians.  (*Id.* at 15-21.)  Fourth, and finally, Plaintiff argues that the ALJ erred in failing to consider her ability to work on a consistent basis.  (*Id.* at 21-23.)

### B.    Defendant's Arguments

In response, Defendant makes four arguments.  First, Defendant argues that the ALJ properly determined that Plaintiff's depression was not a severe impairment.  (Dkt. No. 16 at 10-11 [Def.'s Mem. of Law].)  Second, Defendant argues that the ALJ properly assessed Plaintiff's credibility.  (*Id.* at 11-13.)  Third, Defendant argues that the ALJ properly evaluated the medical opinions.  (*Id.* at 14-17.)  Fourth, and finally, Defendant argues that the ALJ properly determined

that Plaintiff was capable of performing work that exists in significant numbers in the national

economy.  (*Id.* at 17-18.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether

an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health &*

*Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will

only be reversed if the correct legal standards were not applied, or it was not supported by

substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is

a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the

substantial evidence standard to uphold a finding of no disability creates an unacceptable risk

that a claimant will be deprived of the right to have her disability determination made according

to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v.*

*Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has

been defined as "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

Where evidence is deemed susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d

Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past

work.  Finally, if the claimant is unable to perform his past work, the
[Commissioner] then determines whether there is other work which the
claimant could perform.  Under the cases previously discussed, the
claimant bears the burden of the proof as to the first four steps, while the
[Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.    ANALYSIS

### A.    Whether the ALJ Erred in Failing to Find Plaintiff's Mental Impairments Severe

After carefully considering the matter, the Court answers this question in the affirmative,

in part for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 10 at 11-14 [Pl.'s

Mem. of Law].)  The Court would add the following analysis.

According to Social Security Regulations, "[a]n impairment or combination of

impairments is not severe if it does not significantly limit a [claimant's] physical or mental

ability to do basic work activities."  20 C.F.R. § 404.1521(a).  The standard for a finding of

severity under the second step of the sequential analysis has been found to be de minimis, and is

intended only to screen out the truly weakest of cases.  *Davis v. Colvin*, No. 11-CV-0658, 2013

WL 1183000, at *8 (N.D.N.Y. Feb. 27, 2013) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d

Cir.1995).  At step two, the claimant bears the burden to provide medical evidence

demonstrating the severity of her condition.  *See* 20 C.F.R. § 404.1512(a); *Bowen*, 482 U.S. at

146.

When evaluating the severity of mental impairments, the regulations require the ALJ to

apply a "special technique" at the second and third steps of the review, in addition to the

customary sequential analysis.  *See Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir.2008) (citing

20 C.F.R. § 404.1520a).  The technique first requires a determination of whether the Plaintiff has

a medically determinable mental impairment. *See* 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *See* 20 C.F.R. § 404.1520a(c)(3). These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. § 416 .920a(c)(4). A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).

Here, the ALJ concluded that Plaintiff's musculoskeletal back pain was a severe impairment but failed to explain his conclusion, instead reciting a summary of the record evidence in chronological form. (T. 11-14.) The ALJ conducted absolutely no analysis and gave no explanation for his apparent determination that Plaintiff's mental impairment was not severe.

Regarding Plaintiff's mental impairments, the ALJ acknowledged the reports of consultative examiner Sara Long, Ph.D. and psychiatrist, Bal M. Nemani, M.D. as well as the Psychiatric Review Technique completed by one of the Commissioner's medical review psychologists, Dr. E. Kamin. (T. 11-13.) The ALJ correctly noted that "Dr. Long made no diagnosis and observed that [Plaintiff] was able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, appeared to be able to learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others and adequately manage stress." (T. 11, 244.) The ALJ also acknowledged that Mr. Kamin's opinion that Plaintiff had an affective disorder that was severe and that she had "mild limitation of daily living activities, moderate

difficulty maintaining social functioning, mild difficulty maintaining concentration, persistence or pace" and that had experienced "one or two repeated episodes of deterioration of extended duration."  (T. 12; T. 250-260.)  Finally, the ALJ noted that the treatment notes of Dr. Nemani revealed that after his first evaluation of Plaintiff in June 2010, he diagnosed major depression, recurrent and borderline personality disorder and prescribed Abilify at two milligrams per day.  (T. 13, 420.)  While the ALJ further noted that Dr. Nemani opined that Plaintiff was making improvement through December 2010 and that she maintained the improvement in January and February of 2011, he failed to acknowledge that Dr. Nemani's April 2011 treatment note reflected that Plaintiff suffered a recurrence of depression.  Further, over the course of treatment, Dr. Nemani increased Plaintiff's Abilify dosage to ten milligrams per day, added Zoloft at 50 milligrams per day, and increased the dosage of Zoloft to 100 milligrams per day.  (T. 12-13, 419-431.)

Therefore, considering the de minimis standard for a finding of severity, it was error for the ALJ to conclude that Plaintiff's mental impairment is not severe.

To be sure, where "an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis."  *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010).  *See also* 20 C.F.R. § 404.1523 (ALJ required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").  Here, however, although the ALJ did not deny benefits based on the lack of a severe impairment, he did not properly consider the evidence regarding Plaintiff's mental impairment when evaluating Plaintiff's RFC.  Accordingly, the ALJ's failure to find Plaintiff's mental impairment severe at

step two of the sequential analysis is not harmless error.  *C.f., Ellis v. Comm'r of Soc. Sec*., No. 11-CV-2305, 2012 WL 5464632, at *5 (N.D.N.Y. Sept. 7, 2012).  Therefore, remand is necessary on this basis.

### B.    Whether the ALJ Erred in Failing to Properly Assess Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the negative in part and in the affirmative in part.  The Court would add the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence."  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992).  However, the ALJ  "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record."  *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012).  "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief."  *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record.  First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work.  Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility:

> (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.*

Here, the ALJ considered Plaintiff's testimony that she has lost jobs due to inappropriately confronting people, has problems with her memory and concentration and is depressed the majority of the time. In addition, the ALJ considered Plaintiff's testimony that she does not want to be around other people, has very few friends, gets nervous in crowds and has panic attacks. Finally, regarding her physical limitations, Plaintiff testified that the has pain in her neck and back and that she can sit and stand for thirty minutes at a time, but then gets numbness in her back , legs and arms. Plaintiff also testified that she can lift a gallon of milk, cannot lift laundry, can drive a car but cannot bend over to clean the bathtub without experiencing back pain. (T. 15, 31-42.) Without further explanation, the ALJ concluded that "[a]fter careful consideration of the evidence, [I] find[] that [Plaintiff's] medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms are not credible." (T. 15.)

Plaintiff argues that the ALJ erred by failing to explain his credibility determination with any specificity. Defendant counters that evidentiary support for the ALJ's credibility determination is easily gleaned from the ALJ's references to the medical record, medical source statements and Plaintiff's activities of daily living. *See Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011). In support of her argument, Defendant only points to the ALJ's references to the

records regarding Plaintiff's physical impairments and limitations.  The Court finds, for the reasons stated by Defendant in her memorandum of law, that there is substantial evidence to support the ALJ's conclusion that Plaintiff's allegations are not credible regarding her physical limitations.  (*See* Dkt. No. 16 at 12-13 [Def.'s Mem. of Law].)

However, the ALJ's failure to specifically address Plaintiff's mental limitations is error, given the existence of evidence supporting Plaintiff's allegations.  While the ALJ's determination seems to indicate that the ALJ considered some of Dr. Nemani's opinions in support of his decision at step two of the sequential evaluation, the ALJ failed to address Dr. Nemani's opinions at all in support of his RFC determination. As indicated in Point IV.A. of this Decision and Order, while the ALJ considered Dr. Nemani's opinion that Plaintiff was making progress in the beginning of treatment, then maintained that progress for a few months, the ALJ failed to consider that Dr. Nemani's last treatment note of record reflected his opinion that Plaintiff suffered a recurrence of depression.  (T. 12-13, 419-431.)  This evidence tends to support Plaintiff's allegations that she is depressed.  Because the ALJ did not specifically address Plaintiff's allegations of depression and its effects on her ability to function, and given that such limitations are supported by other evidence in the record, remand is appropriate.

C.     **Whether the ALJ Erred in Failing to Properly Assess the Medical Opinions of Doctors**

After carefully considering the matter, the Court answers this question in the negative in part and in the affirmative in part.  The Court would add the following analysis.

Plaintiff argues that the ALJ failed to properly assess the opinion of her treating physician, Darlene Denzien, D.O., consultative examiners, Drs. Long and Roberto Rivera, M.D., and the Commissioner's medical consultant, Dr. Kamin.  Defendant counters that Dr. Denzien's opinions of extreme physical and mental limitations are not supported the medical record, including diagnostic testing and the opinions of Drs. Long, Rivera and Nemani.

In deciding that Plaintiff has the RFC to perform the full range of light work, the ALJ discussed the opinions of Dr. Rivera, Dr. Kamin and Dr. Denzien.  (T. 14-15.)  The ALJ then explained that he gave little evidentiary weight to Dr. Denzien's assessment of Plaintiff's physical and mental limitations because they were not supported by diagnostic testing, appeared to be based on Plaintiff's subjective allegations and referred to symptoms that were not supported by the record.  The ALJ gave great weight to the opinions of Drs. Long and Rivera because they are specialists and examining sources.  The ALJ gave less weight to the opinion of Dr. Kamin because he did not examine Plaintiff and his opinion is inconsistent with other sources and the Plaintiff's mental functioning "as demonstrated by the record as a whole."  (T. 16.)

Under the "treating physician's rule," controlling weight is given to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts.  20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir.2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012).  When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature and extent of the treatment relationship; (2)

12

the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist.  *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000).  Regulations require an ALJ to set forth his or her reasons for the weight assigned to a treating physician's opinion.  *See Shaw*, 221 F.3d at 134.

Further, it is important to note that the ALJ must consider every medical opinion of record.  *See* 20 C.F.R. § 416.927(c). Where, as here, the ALJ does not give controlling weight to a treating source opinion, the ALJ must evaluate each medical opinion based on factors such as the examining relationship, whether the opinion comes from a specialist, whether the opinion is supported by medical signs and laboratory findings, and whether the opinion is consistent with the record as a whole.  *See id.*  Unless there is a treating source opinion, which is given controlling weight, an ALJ's failure to explain the weight given to the opinion of a State agency medical consultant is legal error.  *See Richardson v. Barnhart*, 443 F. Supp. 2d 411, 425 (W.D.N.Y.2006) (citing 20 C.F.R. § 404.1527(c), (e)).  *See also Stytzer v. Astrue*, No. 07-CV-811, 2010 WL 3907771, at *7 (N.D.N.Y. Sept. 30, 2010); *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 295 (W.D.N.Y.2006).

Moreover, an ALJ has an independent duty to make reasonable efforts to obtain a report prepared by a claimant's treating physician, including an assessment of the claimant's functional capacity, in order to afford the claimant a full and fair hearing.  *See Smith v. Astrue*, 896  F. Supp. 2d. 163, 176 (N.D.N.Y. 2012) (citing 20 C.F.R. § 404.1512(e); *Devora v. Barnhart*, 205 F. Supp. 2d 164, 174 (S.D.N.Y. 2002) (collecting cases); *Hardhardt v. Astrue*, No. 05–CV–2229, 2008 WL 2244995, at *9 (E.D.N.Y. May 29, 2008)).  However, the ALJ has no duty to re-contact a source where the evidence submitted by that source is complete.  Where the source's

opinion includes all of the factors set forth in 20 C.F.R. § 416.913[1] and there is no indication that further contact will result in additional information, re-contact is not necessary.  *See Hluska v. Astrue*, No. 06-CV-0485, 2009 WL 799967, at *17 (N.D.N.Y. Mar. 25, 2009).

Regarding the ALJ's assessment of Dr. Denzien's opinion, the Court finds that the ALJ's decision is supported by substantial evidence insofar as he gave little weight to Dr. Denzien's opinion of Plaintiff's physical limitations, generally for the reasons stated by Defendant in her memorandum of law.  (*See* Dkt. No. 16 at 14-16 [Def.'s Mem. of Law].)  Specifically, the diagnostic evidence does not support Dr. Denzien's opinion.  Radiologist Lawrence S. Liebman, M.D. reported a "negative study" from Plaintiff's April 2010 lumbosacral spine x-ray.  (T. 241.) In September 2010, another lumbosacral spine x-ray revealed an "unremarkable lumbar spine." (T.309.)  Also in September 2010, a thoracic spine x-ray was also negative, with "no change since 4/12/2004."  (T. 310.)  Finally, in 2011, a nerve conduction study was normal.  (T. 435-438.)  Moreover, Dr. Denzien's opinion that Plaintiff can only sit for one hour at a time and can stand and walk for thirty minutes at a time  is inconsistent with Dr. Rivera's opinion that Plaintiff has no limitations to sitting, standing or walking.  (T. 240, 364.)

Regarding the ALJ's evaluation of Dr. Rivera's opinion, the Court finds no error.  The ALJ explained that great weight is given to the assessments of Dr. Rivera because of his specialty in internal medicine and because he examined the Plaintiff.  Moreover, his opinion is consistent with the record as a whole.

Finally, because the ALJ failed to address the opinion of Dr. Nemani as it relates to

---

[1]        Pursuant to 20 C.F.R. § 416.913(b), medical reports should include a patient's (1) medical history, (2) clinical findings, (3) laboratory findings, (4) diagnosis, (5) treatment prescribed with response and prognosis, and a (6) statement about what the patient can still do despite his or her impairments based on the findings set forth in factors (1) through (5).

Plaintiff's mental RFC, remand is necessary.  Nonetheless, the Court notes that Dr. Denzien's reported mental limitations are internally inconsistent in part and are not supported by her own treatments notes or the record as a whole.  For example, Dr. Denzien opines that Plaintiff has medium limitation in the ability to "[c]omplete a normal work day and work week without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" but that she has no limitation in the ability to "[i]nteract appropriately with the public[;] [i]nteract appropriately with supervisor(s)[;] [i]nteract appropriately with co-workers[; and] [r]espond appropriately to usual work situations and to changes in a routine work setting[.]" (T. 370, 417.)  In addition, Dr. Denzien states that Plaintiff's symptoms and treatment for her mental condition would reasonably be expected to cause two to three absences from work per month, but in another section of the same report states that Plaintiff would be absent more than four times per month.  (T. 415, 417.) Moreover, some of Dr. Denzien's opinions appear extreme considering the record evidence as a whole.  For example, she opines that Plaintiff has an extreme limitation in the ability to "[p]erform activities within a schedule, maintain regular attendance and/or be punctual within customary tolerances" and that Plaintiff is markedly limited in the ability to "[m]aintain attention and concentration for extended periods of time." (T. 417.)  However, none of Dr. Denzien's treatment notes during the relevant period reflect that Plaintiff presented with any psychological symptoms or concerns.  Moreover, Dr. Long, the consultative examining psychologist, reported the following findings:

> [Plaintiff] was able to follow and understand simple directions and instructions and to perform simple tasks independently.  She was able to maintain attention and concentration and is able to maintain a regular schedule.  She appears able to learn new tasks, perform complex tasks independently, make appropriate decisions, relate

> adequately with others, and to be capable of adequate stress
> management.

(T. 244.)  Dr. Long went on to conclude that "[t]he results of the present evaluation appear to be

consistent with stress-related problems, but in itself, this does not appear to be significant

enough to interfere with her ability to function on a regular basis."  (*Id*.)

Despite the drastic differences in opinion between Dr. Denzien and Dr. Long, the ALJ

failed to properly discuss, much less assess, the opinion of Dr. Nemani, a psychiatrist, who, the

record reflects, treated Plaintiff beginning in June 2010 through at least April 2011.  As indicated

in Point IV.A. of this Decision and Order, Dr. Nemani diagnosed Plaintiff with major depression,

recurrent and borderline personality disorder.  (T. 420.)  He initially prescribed Abilify and then

added Zoloft, eventually increasing the dosages of both.  (T. 421, 422, 424.)  The ALJ and

Defendant point out that Dr. Nemani opined that Plaintiff was making improvement through

December 2010 and that she maintained the improvement in January and February of 2011.  (T.

419-430.)  However, the ALJ failed to acknowledge that Dr. Nemani's April 2011 treatment note

reflected that Plaintiff suffered a recurrence of depression. (T. 431.)  Because the ALJ failed to

address Dr. Nemani's opinion in this regard, remand is appropriate.  *See Wood v. Comm'r of Soc.

Sec*., No. 06-CV-157, 2009 WL 1362971, at * 5 (N.D.N.Y. May 14, 2009).

In addition, the ALJ should have re-contacted Dr. Nemani to obtain his opinion regarding

Plaintiff's mental RFC.  To be sure, Dr. Nemani's reports contain most of the information

required under 20 C.F.R. § 416.913(b).  He includes Plaintiff's (1) medical history, (2) clinical

findings, (3) laboratory findings, (4) diagnosis, and (5) treatment prescribed with response and

prognosis.  However, Dr. Nemani does not provide an opinion about what Plaintiff can still do

despite her impairments based on his findings.  Accordingly, remand is also necessary so that the

ALJ may re-contact Dr. Nemani to obtain his opinion regarding Plaintiff's mental RFC.  *C.f.*
*Hluska v. Astrue*, No. 06-CV-0485, 2009 WL 799967, at \*17 (N.D.N.Y. Mar. 25, 2009).

> **D.    Whether the ALJ Erred in Failing to Consider Whether Plaintiff Is Able to
> Work on a Consistent Basis**

After carefully considering the matter, the Court answers this question in the affirmative,
for the reasons discussed in Point IV.C. of this Decision and Order.  After properly developing
the record regarding Plaintiff's mental limitations, the ALJ should re-assess her mental RFC,
including Plaintiff's ability or inability to work on a consistent basis.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No.16) is
**GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is
**GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. §
405(g), for further proceedings consistent with this Decision and Order.

Dated: June 4, 2014
Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge